Hon. JONATHAN ROSS,
Hon. H. HENRY POWERS, } Assistant Judges.
Hon. WHEELOCK G. VEAZEY,

---

MARTHA J. KENDALL, AND HER HUSBAND, GEO. J. KENDALL
*v.* MISSISQUOI & CLYDE RIVER R. R. CO., CONN. &
PASS. RIVER R. R. CO. & SOUTH EASTERN
COUNTIES R. R. CO.

#### [In Chancery.]

*Railroad. Land Damages. Estoppel. Statute of Limitations.*
*Joinder of Parties. Jurisdiction. Married Woman.*

The defendant, M. & C. R. R. R. Co , constructed its road across the land of the ora-
trix, a married woman, without complying with the statute as to taking land
for railroad purposes, without her consent, and without any action of hers that
amounted to an estoppel. After the road was surveyed and located, but before
the oratrix' land was taken, the M. & C. R. R. R. Co. was mortgaged to secure
its bonds owned by the defendant, the Conn. & Pass. R. R. R. Co., and leased

to the defendant, E. C R. R. Co. The mortgage was forec'osed and the title established in the bondholders. A bill having been brought to enjoin the defendants from occupying the oratrix' land, *Held*,

1. The defendants should be enjoined un'ess they pay the land damages.
2. The husband was properly joined as orator; also, the mortgagee and lessee, as defendants.
3. The claim is not stale, as demand was made within five, and suit brought within six, years. The Statute of Limitations does not apply.
4. Act of 1872, No. 32. passed after the land was taken, and repealed before suit, does not affect the case.
5. A Court of Chancery has jurisdiction, as it is not certain that there is a p'ain-adequate and complete remedy at law.
6. There was no element of an estoppel. The oratrix by word or conduct did not induce any action or mislead anybody, either mortgagee or lessee. The defendants appropriated her land without right ; she seasonably remonstrated, merely *allowing*, but not *inducing*, them to hold it, to perform as originally required by law.
7. *Knapp* v. *McAuley*, 39 Vt. 275, distinguished.

BILL IN CHANCERY. Heard on bill, answer, replication and testimony, February Term, 1882, Ross, Chancellor. Bill dismissed. The bill prayed :

" That the court may proceed to ascertain by the appointment of commissioners or a special master or masters or in whatever way the court may judge fit, the amount of the damage done said farm by the building of the railroad aforesaid, and to decree and enforce the same as an original and special lien on the road-bed of the Miss. & Clyde Rivers Railroad, or that the land may be decreed to her, and the defendants enjoined from running across the same," and for further relief. The oratrix was a married woman.

The defendants claimed by their answers that the oratrix gave their agents a license to construct the road on her farm ; and introduced as testimony the following writing signed by the orator, her husband, and several other parties :

" We the undersigned hereby agree to take of the Missisquoi and Clyde Rivers Railroad Company the amount of damage that may hereafter be agreed upon between us or any of us and the directors of said railroad company, or be fixed by commissioners duly appointed to appraise said damages for such amount of land as said company may be legally entitled to take for the purpose of building their railroad across any land of ours or any of us, in the stock of said company at its par value.

(Signed), GEO. J. KENDALL."
Newport, August 16th, 1870.

The oratrix denied that she knew that her husband had ever agreed to take stock for land damages. The other facts are stated in the opinion.

*C. A. Prouty*, for the oratrix.

The oratrix is still the owner of the land. The payment of damages is a condition precedent to the acquiring of any title to the land taken. *Stacey* v. *Vt. Cen. R. R. Co.*, 27 Vt. 39. There was no waiver of this condition. *Knapp* v. *McAuley*, 39 Vt. 275, is not an authority against the oratrix. *There* was an agreement to take stock. *Here* the testimony does not make out the waiver contended for. The agreement signed by the husband of the oratrix is of no avail, since it is not claimed that she knew that he had, or that she gave him, or that the railroad company supposed, he had any authority to sign such an agreement. A fair consideration of the testimony and the circumstances shows that the company never asked,—and never intended to ask,—her consent to the appropriation of her land. They simply took it. No estoppel. *Hall* v. *Chaffee*, 13 Vt. 157 ; Bigelow Estop. 443 ; *Lowell* v. *Daniels*, 2 Gray, 161 ; *Bemis* v. *Call*, 10 Allen, 512 ; 117 Mass. 241 ; 13 Pet. 107 ; 10 Cush. 276 ; 35 Iowa, 129 ; 20 Ohio, 401.

*Crane & Alfred*,. for the S. E. R. R. Co.

The oratrix had full power to control and dispose of her separate real estate. *Jacques* v. *M. E. Church*, 17 Johns. 548. The *jus disponendi* is incident to her separate property. She can give it away ; charge it with the debts of her husband. *Frary* v. *Booth*, 37 Vt. 78. She has the same power over it as a *femme sole*. *Gardner* v. *Gardner*, 22 Wend. 450 ; an independent, personal *status*. 1 Lead. Cas. Eq. Part 2, (4th Am. Ed.) 684, 68, 730 ; 20 Wend. 570 ; 11 Md. 492 ; 46 Mo. 504. She is bound by her acts, declarations, &c., as if *sole*. 2 Story Eq. Jur. 1400 ; 1 Lead Cas. Eq. Part 3, p. 740. It required no writing to relinquish her lien. 11 Vt. 555 ; *Imlay* v. *Huntington*, 20 Conn. 176. She had full power to *waive* her right. and did waive it. 3 Waite, Act. & Def.

723 ; 1 Redf. Railways, s. 65 ; 3.: Vt. 311 ; 39 Vt. 275. The oratrix' claim is stale and barred by the statute. R. L. s. 3371.

*Edwards, Dickerman* and *Young,* for the Conn. & Pass. R. R. R. Co.

It is too late for the oratrix to assert a prior lien. *Knapp* v. *McAuley,* 39 Vt. 275 ; 1 Redf. Railways, s. 65. A *femme covert,* in respect to her separate estate, is to be regarded in a court of equity as a *femme sole,* and she is to be regarded as a *femme sole* as to her right of contracting for, and disposing of, it. The *jus disponendi* is incident to her separate property, and follows of course by implication. She may dispose of it as she pleases ; and her disposition of it will be sanctioned and enforced by a court of equity. Her acts, declarations and confessions, are evidence in the same manner and to the same extent as if she were a *femme sole.*

The oratrix was the absolute owner of the premises, unrestrained by any limitation, and held them to her sole use. This being so, she had the full power of a *femme sole* in regard to their disposition. 20 Conn. 176 ; 37 Vt. 78. There was no constructive notice to the mortgagees. None is provided for by law. Nothing was to be recorded. R. L. s. 1937. The payment of land damages is condition precedent to acquiring title. But it was waived. *Merrick* v. *Plumley,* 19 Mass. 566. The husband was her agent in taking the stock.

The opinion of the court was delivered by

VEAZEY, J. The defendants claim that the oratrix consented that the railroad should be built across her farm, and agreed to look to the company alone for her pay for land damages. We do not find this fact established by the evidence. She denied that she gave such consent, or was asked to, or agreed to take pay in stock or authorized any other person to so agree, or knew of her husband so agreeing, or was ever paid any damages, or was offered any. It is shown upon uncontradicted testimony that she was away from home when the company took possession of the land and began to build. It is not shown that she knew of this or consented to it, but it is shown by the defendants that she objected

after her return, unless paid her land damages. The work on her farm began in March, and continued through the season until the road was completed, without the interposition of legal proceedings to stop it. The defendants claim that even if she did not expressly agree to look to the company for pay, she is estopped from claiming a remedy by foreclosure or injunction. We think the defendants' evidence fails to show facts creating an estoppel. Mr. Baker, the defendants' principal witness, and the agent of the company to obtain rights of way, admits that he was notified that the oratrix was dissatisfied and did not want to have the work go on until the question of right of way over her land was settled, and says he saw her and explained their embarrassment for money just then, and asked to let the work go on, and said the company would be in condition to satisfy the claim ; and if they could not agree " a commission could be called out to adjust the amount of the damages." Upon cross-examination this question was asked : " Did not you give the oratrix to understand in substance that if she would allow the road to be built, everything in regard to the damages should be satisfactory ? " Answer : " I think I did. I told her that if she and the directors could not agree, they could call out commissioners ; explained to her how this commission would be appointed ; that they would be first-class men." He admits no price was agreed upon ; says he avoided talking about that, and that she did not agree to take stock for pay. Putting the case upon the defendants' testimony, it shows that the oratrix was induced by Mr. Baker, in whom she had great confidence, by such talk as is indicated above, to let the work go on. It fails to show any waiver of rights by her, or that either party so understood it, or any arrangement for ascertainment or payment of damages other than the law provided. The company could acquire the right under her protest, only by arrangement between the parties, or by proceedings under the statutes through commissioners. If the latter method were adopted, it would create a lien in her behalf. She abstained from interference only by promises that one of these things should be done. Neither was done. She agreed to nothing beyond. The right to call out commissioners belonged to the company only. She was led to allow the company, under

the circumstances above stated, to go on with the work by promises to do what the law required to be done in advance in order to acquire any right, and which if done would have been her protection. The case is distinguishable from *Knapp et al.* v. *McAuley et al.*, in the 33d and 39th Vermont Reports; because there the consent was under an arrangement for the subsequent ascertainment and payment of damages in the stock of the company, and there was no fraud, or failure to perform according to the agreement, on the part of the company.

The oratrix did not lull the railroad company by words or silence, but was herself lulled by promises to do that which was her right and its obligation under the law. The railroad company was then a trespasser; and the oratrix desisted from proceeding against it as such under these promises, in order to give opportunity to pay or to acquire the right and have the damages adjusted under the statutes which would create a lien as security for them. We think the Statute of Limitations does not apply to bar the oratrix' remedy by injunction. The company's promises secured its wrongful possession from interruption, but the oratrix' rights were unaffected, except possibly as to form of remedy. There was no contract between the parties. There was only a temporary conditional acquiescence to the possession, possibly of a nature to affect a remedy by ejectment, but not of a nature to make the possession rightful, without compensation. The continuance of the possession continued the oratrix' right to a remedy. The remedy provided by Act No. 32, Public Acts of 1872, is not applicable; because the oratrix' land was taken before that act was passed, and it was repealed in 1874.

Her claim is not stale; because it was the subject of discussion with an officer of the company at different times while the road was being built and subsequently, and within five years demand was made through an attorney, and within six years legal proceedings were instituted, and they have been followed ever since.

On the 2d day of March, 1872, which was before said railroad company entered upon the oratrix' farm to construct the road, the company mortgaged the whole road to trustees of bondholders to secure a large amount of bonds issued by the company, and the

bondholders were mainly if not entirely the Connecticut & Passumpsic Rivers R. R. Co. The trustees foreclosed this mortgage and the equity of redemption expired, fixing the legal title in them in trust for said bondholders. The oratrix made the trustees and bondholders parties defendant. It is now claimed in their behalf that they are not proper parties and the bill should be dismissed as to them with costs. This question is apparently one of very little consequence in this case, and received but little attention in the argument, and no copy of the mortgage was furnished. The general rule is that every person interested in the matter in controversy should be made a party to the suit. The facts were not sufficiently developed or submitted to show that these parties were not interested. There are cases where *cestuis que trust* are not only proper but necessary parties.

But it is further claimed in behalf of these defendants and the South Eastern Railway Company, which has operated this road since it was built, under a perpetual lease, that they had no notice in fact that the oratrix' land damages had not been paid, and that an enforcement of the oratrix' claims would work injustice upon them, they having loaned or paid their money and taken their respective titles in the honest belief that her damages had been settled for.

The lease and mortgage were both dated March 2, 1872, which, though after the survey and location of the road, was before the company took possession and began to build on the oratrix' farm. This was done in her absence and without her knowledge. Neither by word or conduct did she induce any action or mislead anybody. The ownership and record title were in her. The statute required an appraisal by commissioners where land was taken adversely, to be recorded in the town clerk's office of the town where the lands are located. It imposed no duty upon the landowner when his land was taken for a railroad, but left it to the company to act, in order to acquire a right of way. The company appropriated the land without right, and when remonstrated with seasonably, was allowed, not induced, to hold it, by promises, not in substitution of its original duty, but to then perform as originally required by law. It is difficult to read the evidence submitted without

being somewhat impressed with the idea that the defendants' promises through its agent Baker were fraudulently made, and without any intent to perform.  Certainly the case fails to show any intention of the oratrix that any party should be misled by, or act upon, her conduct.  The case plainly lacks the elements required to constitute an estoppel.  If these defendants were misled or acted upon a misunderstanding, it was the result of their own negligence.

It is further objected that this suit is improperly brought by the husband and wife ; and it is claimed that the bill should have been filed by the wife alone by her next friend, and that her husband ought to be made defendant.  There would be force in this claim if the suit related to the wife's *separate property* which she held in exclusion of the marital rights of her husband.  But where the suit involves a married woman's rights, and it appears that her claim is not in opposition to rights claimed by the husband, which is this case, it is usual for the suit to be instituted by them jointly. Mitford & Tyler's Pl. & Pr. in Equity, p. 123, and cases there cited ; *Bradley* v. *Emerson, et al.*, 7 Vt. 369 ; *Porter et al.* v. *Bank of Rutland et al.*, 19 Vt. 410.

We think a Court of Chancery has jurisdiction.  In Story's Equity Jurisprudence the rule is laid down as follows : " It may, therefore, be said, that the concurrent jurisdiction of equity extends to all cases of legal rights, where, under the circumstances, there is not a plain, adequate, and complete remedy at law."  The only remedy at law suggested is an action of ejectment.  It is not plain that such action would lie.  Having jurisdiction it is the duty of the court to have the damages determined, and its rights to proceed in this behalf by the appointment of masters for the purpose according to the usages in chancery.  The complainant prays for an injuction unless the damages for taking the land are paid.  Without deciding that this is the only remedy applicable, we think it appropriate, and warranted upon the facts established.

The decree of the Court of Chancery is reversed, and the cause remanded, with a mandate in accordance with the foregoing views.