The St. Louis, Arkansas & Texas Railway Company
v. W. C. Henderson.

### No. 75.

**1. Liens Given by Law—Foreclosure—Practice.**

When the issues submitted to a jury embrace only such claim or claims as by law are given a lien upon property, it is not necessary to submit the question of lien to a jury.  Day v. Cross, 59 Texas, 608 ............ 309

**2. Same—Other Issues—Practice.**

If more than one issue be submitted involving several different claims upon which recovery is sought, and upon one or more no lien would attach by law, and none exists by undisputed contract, if the jury return a general verdict the court can not declare a lien upon such verdict; for it is not certain that the amount found to be due is upon a claim entitled by law to a lien ....................................... 310

**3. Compensation in Condemnation Proceedings—Constitution.**

Compensation which the Constitution requires to be made in advance, includes such damages as might be estimated on condemnation proceedings, which are " all damages, present and prospective, that are the natural, necessary, or reasonable incident of the improvement, not including such as may arise from negligent or unskillful construction or use thereof."   Without such payment title does not pass............ 312

**4. Same—Lien.**

If a railway, either with or without condemnation proceedings, take the land of another for right of way or other use, then the owner will have a lien upon the land to secure the payment of all damages which the Constitution and the law require to be paid before the right to use it vests.   The value of the land, damages caused to the balance of the tract, and any other damages that with reasonable certainty might be known as the result of the proper construction and operation of the railway, would be included........................................ 313

**5. Where Lien not Given.**

But the Constitution and laws of the State give no lien for damages arising from negligence or unskillful construction or operation of the railway. 313

**6. Liens Given by Law—Practice—Case in Judgment.**

Suit by land owner against the railway company for damages for land taken, damages to tract remaining, for failure to make crossings stipulated, and for insufficient culverts and sluices causing overflow. These were all submitted as bases for damages, and a gross sum was given plaintiff in the verdict.  The pleadings and evidence warranted the submission of these issues....................................... 310

*Held:* 1. The facts pleaded and prayer for general relief authorized judgment foreclosing the lien for the damages given by the Constitution and laws for the taking of property ........................... 312

2. It being impossible to determine from the verdict that the damages were such as the law gives lien, it is ground for reversal that a decree foreclosing the lien was rendered............................ 314

Error to Court of Civil Appeals for Second District, in an appeal from Tarrant County.

*Perkins, Gilbert & Perkins, Sam H. West,* and *Newton H. Lassiter,* for plaintiff in error. — This case presents the peculiar case of a lien being adjudged to secure unliquidated damages, which are held to be purchase money in a case where there has been no conveyance of the property to the party purchasing. If we are correct in our construction of the opinion of the Court of Civil Appeals, we think the same is in conflict with the elementary authorities and the decisions of the courts of last resort of the various States on the question of a vendor's lien, and submit the following for the consideration of this court:

1. A lien does not exist as a security for an unliquidated and uncertain demand.

2. A lien does not exist on land to secure the performance of a covenant or agreement of a purchaser of land to do specified acts as part consideration for the conveyance.

3. No lien exists upon any property for a wrongful trespass and taking of land by railway company for right of way. Jones on Liens, sec. 1071; Paine v. Avery, 21 Mich., 524, and other authorities cited in note under said section.

*J. Y. Hogsett,* for defendant in error.

BROWN, Associate Justice. — Henderson sued the railroad company in the District Court of Tarrant County, to recover damages caused by defendant taking his land for the construction of its railroad, and for damages occasioned by the manner of its construction, setting up many grounds of damage. Judgment was given in the District Court for the plaintiff, from which the defendant appealed; the judgment was by the Court of Civil Appeals affirmed. The Court of Civil Appeals filed the following conclusions of fact:

"Appellant, through its right of way agent, and appellee entered into a verbal agreement for the purchase on the part of the appellant of the right of way for its railroad across appellee's land; but they were unable to agree upon the amount of compensation to be paid for this right of way, which resulted in the submission of this question to the decision of three arbitrators, who fixed the amount of the damages at $2250. A deed was signed and acknowledged by appellee, but whether it was delivered to appellant was one of the controverted issues. The damages were assessed by the arbitrators and the deed executed by appellee upon certain representations made by appellant as to the alignment and grade of the railroad to be constructed and the manner of its proposed construction. After the money awarded by the arbitrators had been paid to the appellee, but before the deed had passed beyond his control, upon discovering that the alignment and the grade of the road had been changed to his detriment, and that it was not being constructed as repre-

sented and contemplated when the damages were assessed and the deed executed, he brought this suit to recover the full amount of the damages resulting to him from the taking of the land and from the incidental injury to the land not taken, growing out of the manner and extent of the actual taking of the land and the construction of the road; the railroad as actually constructed taking more land than was originally contemplated, imposing additional burdens on the land not taken, and depriving appellee of certain privileges in the way of farm crossings promised and specified in the aforesaid deed. Appellee admitted as a credit on the total amount claimed the $2250 awarded by the arbitrators, but alleged misrepresentations and fraud in the previous transactions, and sought to avoid the effect of the deed and award of the arbitrators.''

Plaintiff in error filed in the Court of Civil Appeals a motion for rehearing, setting up the grounds urged by it in this court, which motion the Court of Civil Appeals overruled.

Plaintiff in error presents to this court, in substance, the proposition, that the Court of Civil Appeals erred in not reversing the judgment as to the lien foreclosed on its railroad, for three reasons:

1. That the petition did not pray for a lien.

2. That the facts did not authorize the foreclosing of a lien upon its road.

3. That the verdict of the jury did not find any lien for the plaintiff.

We think that the prayer of the petition was sufficient to justify the foreclosure of the lien, if the case before the court showed that the plaintiff was entitled to such judgment.

The facts found by the Court of Civil Appeals show, that for some of the damages claimed the plaintiff would be entitled to a lien, and for some that might have been found by the jury there would be no lien. In connection with the third ground we will discuss this question more fully.

When the issues submitted to a jury embrace only such claim or claims as by law are given a lien upon property, it is not necessary to submit the question of lien to the jury, because in finding that the plaintiff is entitled to recover on such claim or claims for any amount, the jury determines that a lien exists, which will be declared by the court as a matter of law, and upon a general verdict a decree of foreclosure should be entered by the court. Day v. Cross, 59 Texas, 608; Pearce v. Bell, 21 Texas, 691; Jones v. Ford, 60 Texas, 131; Railway v. James, 73 Texas, 18.

In such case, if the court were to submit to the jury the question as to the existence of lien, it would necessarily be in the form of an instruction to the effect that if they found the plaintiff entitled to recover they would find a lien for the amount so found on the property in question, which would be the declaration of the court that a lien attaches to such claim by law, and the jury would not exercise any discretion upon the subject

submitted. It would simply be the declaration of the law by the court before verdict, instead of upon the verdict.

If, however, more than one issue be submitted, involving several different claims upon which recovery is sought, and upon one or more no lien would attach by law, and none exists by undisputed contract, if the jury return a general verdict, the court can not declare a lien upon such verdict, for it is not certain that the amount found to be due is upon a claim entitled by law to a lien.

In order to determine whether or not the court committed error in foreclosing a lien upon the land, we must ascertain upon what character of claims the recovery was sought, and upon which of these the charge of the court authorized the jury to find a verdict. For the purpose of ascertaining the issues submitted, we must look to the record of the case, and will examine the petition and answer with that point in view, not passing upon them in any other respect.

The case was tried upon the plaintiff's third amended original petition, which is full in its allegation, containing all the facts alleged in the former pleadings by plaintiff. The petition is framed upon different and contradictory theories, as it appears to us. It sets up the agreement to sell to the railway company, the arbitration, payment of the award by the railway company to plaintiff, and the signing and acknowledging of a deed by plaintiff, and then the withholding of the deed from plaintiff to defendant because the railway company had violated the contract of sale. Charges the deed and award to be void for fraud, and retaining the money paid, seeks to recover damages as if no deed or award had been made; treating the case as if defendant had taken possession of the land without the consent of the plaintiff. Another theory upon which the petition seems to be framed is, that the deed is valid but the award is void for fraud, and plaintiff is entitled to recover as if no award had been made, including the right to recover upon the conditions of the deed for building crossings. If the deed and the award be binding, then plaintiff seeks to recover damages for the failure to put in the crossings, and for land occupied which was not embraced in the deed and award, and for damages occasioned by the negligent construction of the road in not putting in sufficient culverts and sluices to carry off the water, and by which plaintiff's land was overflowed.

After instructing the jury as to the rules by which they should determine whether or not the deed conveyed title to the railroad company, and as to the binding force of the award upon the plaintiff, the court charged the jury as follows:

" If under the foregoing instructions you find that the said deed did not operate to divest title out of Henderson and vest it in the railroad company to the land therein mentioned, or if under the foregoing instructions you find that plaintiff is not bound by the award of the arbi-

trators, you will find for the plaintiff, and assess his damages at the value of the land that was appropriated by the defendant for its right of way, at the time it was taken by the defendant, and in addition thereto the difference, if any, between the value of the remainder of the tracts through which the railway was built immediately before and immediately after the construction of said railway, looking at the matter with the lights now before you, with interest thereon at 8 per cent per annum from the time the railway was built. If the amount of such damages, if any you find under the above instruction, does not exeeed the sum of $2250, which plaintiff has been paid, you will find for the defendant. If you find more than $2250 as plaintiff's damages, you will give him a verdict for the excess and interest at 8 per cent per annum.''

No error is assigned on the charges, and we do not pass upon their correctness.

If the court had given no other charge, then the sum found by the jury must necessarily have been for the value of the land taken and damages to the remainder of the tracts through which the road was built. But the court gave also this charge:

'' If under the foregoing instruction you find either that said deed operated to vest title to said land in the defendant, or that said award is binding on plaintiff; and if you believe from the evidence that defendant failed to erect and maintain good and sufficient crossings wide enough for a binder, at suitable places designated by plaintiff, and that plaintiff designated suitable and practicable places for such crossings, you will find for the plaintiff the difference, if any, between the value of his land through which the railway was built, with the crossings that were constructed, and what would have been its value had the crossings been good and sufficient, as above defined. And if you believe from the evidence that in the construction of its railway defendant failed to provide such culverts and sluices as the natural lay of the land required for necessary drainage thereof, and that by reason of the omission, if any, to provide such culverts and sluices, and the manner of construction of defendant's railway, a portion of plaintiff's land was rendered liable to be overflowed by the waters being turned upon it in quantities larger than the flow was before the railway was built, and that by reason of the water being backed upon and flowed onto plaintiff's land the same was injured, you will find for plaintiff the difference, if any, between the value of the land so injured immediately before and immediately after the railway was built.''

It will be observed that the jury is authorized by the last charge to find for plaintiff damages for the failure of the railway company to put in good and sufficient crossings, if they find that the deed vested title in the railway company. They are also authorized to find damages for such failure if the deed did not vest title and the award is binding upon plaintiff. If the deed vested title, then the making the crossings would be a part of

the purchase price of the land; but in case the deed was not binding, and did not vest title in defendant, there was no contract stated in the charge as a predicate for the finding. The damages assessed would be for what the court assumed was a failure to discharge a duty; therefore would be damages for negligent construction of the road. In any event this charge authorized the finding of damages for the failure to put in sluices and culverts, which would be damages occasioned by negligent construction.

Under the first instruction quoted the jury may have found the whole amount of their verdict for the value of the land taken and damages to the remainder of the tracts; or the verdict may have been found under the second charge quoted for damages to the tracts of land on account of the failure to put in road crossings, the deed being binding and title vesting in defendant. Or the jury may have found that the deed did not vest title to the land in defendant, but that the award was binding on plaintiff, and under this view of it may have found damages to the land on account of the failure to put in crossings, independent of any contract to do so. If the deed did not take effect to vest title in defendant, then it could be binding on defendant as a contract to put in the crossings, and the damages assessed would not be a part of the price of the land.

The verdict of the jury may have been in whole or in part for damages to the land on account of the failure to put in culverts and sluices. The jury may have found under the first charge in part for the value of the land taken and damages to the remainder of the tracts, and also in part for the failure to put in culverts and sluices.

If the jury found the award not binding and the deed effective to pass title, they may have found in part for damages for failure to put in crossings and in part for failure to put in culverts, etc. If the deed was not effective to pass title, but the award was binding, then the verdict may represent damages given for failure to construct crossings, and also in part for failure to put in sluices and culverts. It is impossible to tell what the verdict of the jury does represent.

It becomes necessary to determine for what character of damages the law gives to the owner a lien on the land to secure payment. This depends to some extent upon the construction to be given to our Constitution, article 1, section 17, which is as follows: "No person's property shall be taken, damaged, or destroyed for or applied to public use, without adequate compensation being first made, unless by consent of such person; and when taken, except for the use of the State, such compensation shall be first made or secured by a deposit of money." The payment of the compensation is a condition precedent to the right to take and use, and title does not vest to the right of way or the use until payment is made.

In the case of Pennsylvania Railway Company v. Marchant, 119 Pennsylvania State, 541, the Supreme Court of Pennsylvania, in construing a

clause of their Contitution similar to the above quoted section, said: "It is very plain to our view, that the constitutional provision was intended to apply to such injuries as are capable of being ascertained at the time the works are being constructed or enlarged, for the reason, among others, that it requires payment to be made therefor or security to be given in advance. For how can injuries which flow only from future operation of the road, which may never happen, be ascertained in advance, and compensation made therefor?"

Compensation which our Constitution requires to be made in advance includes such damages as might be estimated on condemnation proceedings, which are "all damages present and prospective that are the natural, necessary, or reasonable incident of the improvement, not including such as may arise from negligent or unskillful construction or use thereof." Irrigation Co. v. Middaugh, 12 Colo., 434; Omaha v. Kramer, 25 Neb., 489.

If a railroad company purchase from the owner the right of way for its road over his land, then for the price agreed to be paid, whether in money or in the constructing of crossings and the like, or other thing to the owner's advantage, the owner will have a lien upon the land for the money to be paid or for damages for the failure to do the thing agreed to be done. Howe v. Harding, 76 Texas, 18; Railway v. Lewton, 20 Ohio St., 319.

If a railroad company, either with or without condemnation proceedings, take the land of any person for right of way or other use of its railroad, then the owner of the land will have a lien upon the land to secure the payment of all damages which the Constitution and the law requires to be paid before the right to use it vests, which would include all such damages as would naturally or necessarily flow from the taking and proper construction and operation of the road over the land. The value of the land and damages caused to the balance of the tract, and any other damages that might be with reasonable certainty known as the result of the proper construction and operation of the railroad, would be included. Railway v. Harvey, 107 Pa. St., 319; Railway v. Cooper, 105 Pa. St., 241; Drury v. Railway, 127 Mass., 571; Kendall v. Railway, 55 Vt., 438; Kittell v. Railway, 56 Vt., 96; Adams v. Railway, 57 Vt., 240.

But the Constitution and laws of this State give no lien for damages arising from negligence or unskillfulness in construction or operation of the road.

The same doctrine prevails in England, and the courts have expressed the rule in very broad and forcible terms. In Walker v. Railway, Law Reports, 1 Equity, 197, the master of the rolls said: "In the first place, I think that no distinction can be made between the money to be paid to him for the price of the land and the money to be paid by way of compensation for severance and other injury." It was claimed in that case

that a lien did not exist for damages to the balance of the tract. Further discussing the right of the plaintiff, the master of the rolls said: "Then it is said that the enforcement of the lien would interfere with the rights of the public. Now I admit that the rights of the public are to be considered; but can it be said that a railway company may take a man's land without paying for it, and when he seeks to enforce payment may set up as a defense the rights of the public? I know of no authority for such contention, and I certainly will not be the first to sanction it. The public, in my opinson, can not be interested in having a man deprived of his property."

In Munns v. Isle of Wight Railway Company, Law Reports, 8 Equity, 653, the land owner, who had not been paid for land taken for right of way by a railroad company, sought to have the land sold, and to enjoin the railroad company from using it until the payment was made. "The vice chancellor said, that the petitioner who had obtained a decree against the company was fully entitled to say to them, 'Either pay me the balance of my purchase money, or give me back my property.'"

As we have seen, under the charge of the court the verdict of the jury in this case may include damages for which no lien is given by law, and it was error for the District Court to foreclose a lien upon the general verdict of the jury.

The Court of Civil Appeals should have reversed the judgment; and for the errors committed, the judgments of the District Court and Court of Civil Appeals are reversed, and the cause is remanded to the District Court for further proceedings.

*Reversed and remanded.*