AMERICAN HOME ASSURANCE COMPANY, Appellant,

v.

Loyd BURNETT, Appellee.

No. 8685.

Court of Civil Appeals of Texas, Texarkana.

June 26, 1979.

Lancaster Smith, Harvey L. Davis, Dallas, for appellant.

Thomas A. Blakeley, Jr., Grady, Johnson, Blakeley, Johnson & Smith, Dallas, for appellee.

CORNELIUS, Chief Justice.

In this worker's compensation suit Loyd Burnett recovered judgment for $7,571.20, representing benefits for partial incapacity. The judgment was based upon jury findings that, after a period of total incapacity for which benefits had already been paid, Burnett continued to suffer partial incapacity from January 16, 1976, until January 31, 1978, and that his average weekly wage earning capacity during such period was reduced from $276.46 to $75.00. American Home argues that those jury findings cannot be sustained on appeal because the undisputed evidence showed that Burnett worked for the same employer during nearly all of the period of claimed disability making a higher wage than he did before his injury, and all the testimony from medical experts agreed that no objective indication of injury or disability was found in Burnett during the time in question.

■ Although the worker's compensation act speaks in terms of incapacity, it is designed, as far as general injuries are concerned, to compensate a worker for his loss in wage earning capacity, not for actual loss of wages. *Employers Reinsurance Corporation v. Holland,* 162 Tex. 394, 347 S.W.2d 605 (1961); *Electric Mutual Liability Ins. Co. v. White,* 579 S.W.2d 946 (Tex.Civ.App. Houston-1st Dist. 1979, no writ). Indeed, the approved definition of "wage earning capacity" and the definition given by the trial court in this cause, is that

> " 'EARNING CAPACITY' means ability and fitness to work in gainful employment for any type of remuneration, including salary, commissions, and other benefits, whether or not the person is actually employed. *It does not necessarily mean the actual wages, income, or other benefits received during the period inquired about."* See Texas Pattern Jury Charges, Vol. 2, P. 62 (1970).

The fact, then, that a worker continues to work during the claimed period of incapacity and earns as much or even more money than before his injury does not, as a matter of law, mean that he has not suffered a reduction in earning *capacity.* It is but a circumstance to be considered by the fact finder in determining whether a loss in earning capacity has occurred. *Electric*

*Mutual Liability Ins. Co. v. White,* supra; *Texas Employers' Ins. Ass'n. v. Armstrong,* 572 S.W.2d 565 (Tex.Civ.App. Eastland 1978, no writ); *Texas General Indemnity Company v. Hope,* 461 S.W.2d 481 (Tex.Civ. App. Eastland 1970, writ ref'd n. r. e.); *Travelers Insurance Company v. Walkovak,* 390 S.W.2d 75 (Tex.Civ.App. Houston 1965, writ ref'd n. r. e.); *American General Insurance Company v. Bailey,* 287 S.W.2d 290 (Tex.Civ.App. Galveston 1956, writ ref'd n. r. e.); *Trinity Universal Ins. Co. v. Rose,* 217 S.W.2d 425 (Tex.Civ.App. Eastland 1949, writ ref'd n. r. e.); *Great American Indemnity Company v. Segal,* 229 F.2d 845 (5th Cir. 1956). American Home recognizes the correctness of the foregoing proposition but insists that the evidence of Burnett's working during the entire period of claimed partial incapacity at higher wages than he previously earned, together with the lack of objective findings of physical disability, or any evidence of Burnett's inability to obtain and hold employment, render the jury findings of partial incapacity and reduced earning capacity without any support in the evidence, or at least against the great weight and preponderance of the evidence. We cannot agree.

Burnett testified that he injured his back while lifting boxes of hams for his employer, Decker & Company. He reported the injury and immediately went to the hospital. He remained off work for sixteen weeks after the injury and was treated by three physicians. He stated that, although he was not well and was still suffering pain, he returned to work on January 16, 1976, because he could not afford to stay off longer. He testified that after returning to work he could not, without pain, do the lifting work that he previously did and that he was in pain much of the time. He was hospitalized again in November of 1976 and missed two weeks of work. He continued to see Dr. Selby. In the summer of 1977 he lost another five weeks of work. Since then he has not lost any significant time from work but has called in sick on those times when the pain was so bad that he could not go to work. He testified that during the claimed period of partial disability, he missed several opportunities for overtime work because he was not able to do it. He has seniority at Decker and he stated that if he were to get laid off there the best he could do would be light work at $2.00 or $3.00 per hour as compared to the $7.31 per hour he makes at Decker. Although none of the doctors could find any objective indication of disability in Burnett during the period in question, Dr. Selby estimated that he had suffered a permanent 10% disability. He recommended a rhizotomy which kills the pain and the nerves in the affected area of the body, but Burnett would not take that treatment because he was afraid it would paralyze him. One of Burnett's co-workers testified that he had observed Burnett having difficulty on the job bending and straightening up as if his back was hurting him, and Mrs. Burnett corroborated her husband's testimony about his pain and inability to do any lifting.

■ Direct evidence of disability resulting in a reduction of earning capacity is not required, but the fact may be established by circumstantial evidence and upon the testimony of lay witnesses alone, even though it is contradicted by the testimony of medical experts. *Rowland v. Standard Fire Insurance Company,* 489 S.W.2d 151 (Tex.Civ.App. Houston-14th Dist. 1972, writ ref'd n. r. e.); *Commercial Insurance Co. of Newark, N. J. v. Lane,* 480 S.W.2d 781 (Tex.Civ.App. Dallas 1972, writ ref'd n. r. e.); *Travelers Insurance Company v. Wade,* 373 S.W.2d 881 (Tex.Civ.App. Dallas 1963, writ ref'd n. r. e.). Likewise, direct evidence of the extent of the reduction of earning capacity is not absolutely necessary. Because of the uncertain nature of the damages suffered, the jury is allowed great latitude in arriving at the compensation to be awarded. *Commercial Insurance Co. of Newark, N. J. v. Lane,* supra. And the same evidence which will allow a jury to estimate a percentage of disability may also be considered in estimating the extent of a reduction in earning capacity. *Fidelity & Casualty Co. of New York v. Read,* 433 S.W.2d 797 (Tex.Civ.App. Waco 1968, writ ref'd n. r. e.).

In addition to general evidence of disability, there was in this case some evidence from which it could be inferred that, except for his relationship and position of seniority with his employer, Decker & Company, Burnett would have been able to earn during the period in question only $2.00 or $3.00 per hour. The jury could reasonably deduce from all of that evidence that he had suffered a reduction in his earning capacity to the figure of $75.00 per week. We cannot say that such a finding is without any support in the evidence or that it is so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust.

The judgment is affirmed.